Patricia HUSTON, Trustee of Trust A and Trust B under the Will of John Huston, deceased, Plaintiff,

v.

Russell R. LEWIS, Mitzi Lewis, A.R. Spaulding, and Joyce Spaulding, Defendants and Appellants.

Stateline Properties, Inc., Appellee.

No. 890476.

Supreme Court of Utah.

Sept. 12, 1991.

Ralph J. Marsh, Salt Lake City, for defendants and appellants.

R. Stephen Marshall, Marilyn M. Henriksen, Salt Lake City, for appellee.

HALL, Chief Justice:

This is an appeal from an order of the third district court terminating appellants' right to redeem certain real property. We affirm.

On or about February 28, 1989, appellee Stateline Properties, Inc. ("Stateline"), purchased the subject property at a foreclosure sale for $210,000.[1] The property is located in Wendover, Utah, and was formerly known as the Patio Motel. Stateline went into possession and, while continuing to operate the property as a motel, demolished two motel units, dismantled electrical equipment, and commenced work on other units to prepare them for eventual demolition. On March 17, 1989, appellants Mitzi and Russell Lewis, who had a security interest in the property, notified Stateline that the demolition was in violation of the rights of potential redeeming parties. Upon receiving this notice, Stateline ceased the demolition. On August 24, 1989, 4 days before the redemption period terminated and 160 days after Stateline ceased demolition, the Lewises informed Stateline of their intent to redeem the property and requested an itemized statement of the amounts required to redeem, less the amounts required to repair the damage caused by demolition. Request was also made for a verified written statement of rents and profits since the sheriff's sale.

On August 28, 1989, the date on which the redemption period would otherwise end, the Lewises filed an ex parte motion to enlarge the period for redemption under Utah Rule of Civil Procedure 6(b), a petition for determination of reasonableness or propriety of the redemption amount under Utah Rule of Civil Procedure 69(f)(3), and a bid showing that it would cost $388,000 to repair the damage caused by the demolition. The Lewises also deposited $50,000 with the court which, together with a setoff of $388,000 for damage done to the property, was argued to be more than sufficient to redeem the property. The court issued an order extending the period for redemption to October 10, 1989, and set a hearing for September 27, 1989, to determine the reasonableness and propriety of the amount required to redeem the property. On that same day, after the Lewises obtained the extension of time but before Stateline received notice of the extension, Stateline delivered an itemized statement of the amounts required to redeem the property totaling $256,599.45. The statement did not include any setoff for waste.

On September 6, 1989, Stateline filed a motion to dissolve the court's order extending the redemption period. A hearing was set to hear this motion on September 8, 1989. The Lewises received notice of the hearing on September 6 and objected to the hearing on several procedural grounds. One ground which has been reasserted in this appeal is that the Lewises were entitled to 10 days' notice before a hearing on the motion pursuant to rule 4–501, Code of Judicial Administration, due to the fact that the memorandum in support of Stateline's motion exceeded ten pages. Despite the objections, a hearing on Stateline's motion was held on September 8, 1989.

At the hearing, the Lewises alleged that because of the demolition of the motel units, they were unable to obtain financing to redeem the property. Therefore, it was argued, equity entitles the Lewises to an extension of the redemption period and a setoff for the amount of waste, to be determined at an evidentiary hearing, from the redemption price. Stateline argued that despite the Lewises' allegations, equity does not require either an extension of the redemption period or a setoff of any waste from the redemption price. Rather, any claim for waste must be made under rule 69(g)(1) after a redeeming party's "estate has been made absolute." Stateline also asserted that the demolition of the structures in question was necessary because the structures were unsafe, unhealthy, and

---

**1.** Patricia Huston, trustee of two trusts under the will of John Huston, commenced the foreclosure proceedings. A.R. Spaulding, Joyce Spaulding, Russell R. Lewis, and Mitzi Lewis, all having interests in the property, were joined in the proceedings.

beyond repair. The trial court did not, at this stage or any other stage of the proceedings, make any factual determination concerning the amount of waste. At the close of the hearing, the court ruled that to retain their right of redemption, the Lewises must pay $260,000 into an interest-bearing account within 5 days. The court further ordered that if the required amount was paid, the redemption period would continue to run until September 27, 1989, "or until the matter is heard by the court to make the determination as far as any waste on the property."

Following the September 8 hearing, counsel for Stateline prepared a written order to reflect the court's ruling. The Lewises objected to the form of the proposed order, and Stateline filed a memorandum in support of the proposed order. The amount required to redeem the property was not deposited within the allotted 5 days. After it became clear that the Lewises had not complied with the court's September 6 order, Stateline filed a motion to strike the hearing that had been set for September 27, 1989. The September 27 hearing was not held because a criminal matter took priority that day. However, a hearing was scheduled for October 2, 1989, on the propriety of Stateline's proposed order and Stateline's motion to strike any hearing to determine the amount of waste.

Prior to the hearing on October 2, the Lewises filed affidavits asserting that they had obtained the $210,000, which, with the $50,000 previously deposited into the court, was sufficient to redeem the property regardless of the court's determination of the appropriate redemption price. At the hearing, the Lewises reasserted the arguments that they made at the September 8 hearing. In addition, they stated that Merrill Title Company was holding $210,000 in escrow for the purpose of redeeming the property. They asserted that they could obtain release of the funds the next day, October 3. However, they requested an extension of the redemption period beyond October 3 in order to have additional time to obtain certificates of title to certain vehicles and an airplane that Merrill Title Company required as additional security.

At the close of the hearing, the court ordered the Lewises to deposit in an escrow account the sum of $256,000 "and some odd cents and dollars" less the $50,000, previously paid into the court, by the close of business on October 3, 1989. The court further ordered the Lewises to deliver to Stateline a written acknowledgment that the funds were being held in escrow and a written commitment to pay the full amount held in escrow concurrently with the conveyance of the property. The Lewises, however, were unable to obtain the certificates of title to the vehicles and the airplane by October 3. Therefore, they failed to deliver the written acknowledgment to Stateline in compliance with the court's order. On October 13, 1989, the court, in accordance with its October 2 order, issued a final order ruling that the Lewises' redemption rights had irrevocably lapsed. The Lewises appeal from this ruling.

Two general issues are raised on appeal. First, the Lewises claim that the trial court erred in not giving them sufficient notice of the September 8 hearing. Second, the Lewises claim that the trial court erred in not extending the redemption period beyond October 3 and in ruling that because they did not deposit the full amount requested to redeem the property into the court on that date, their redemption rights terminated.

■ In addressing the Lewises' first claim, it must be noted that Utah Rule of Civil Procedure 61 provides that no one is entitled to relief from an order or judgment due to an error in the judicial proceedings unless the error is harmful.[2] An error is harmful when it is of sufficient impact that there is a "reasonable likelihood that the error affected the outcome of the proceedings."[3] Given this standard, it is unneces-

---

**2.** Utah R.Civ.P. 61; *Martineau v. Anderson,* 636 P.2d 1039, 1042 (Utah 1981); *Jensen v. Eames,* 30 Utah 2d 423, 519 P.2d 236, 238 (1974) (no prejudice resulted from the failure to follow the five-day notice requirement of rule 6(d)).

**3.** *State v. Verde,* 770 P.2d 116, 120 (Utah 1989).

sary to determine if the requirements of rule 4–501 must be met on a motion to dissolve an order granted ex parte. It is clear from the record that if the court did err, the error was harmless. At the October 2 hearing, the Lewises were allowed to reassert the arguments they made at the September 8 hearing. Indeed, after the October 2 hearing, the court modified its September 8 ruling, in effect extending the redemption period to October 3. Since the Lewises clearly had adequate time to prepare for the October 2 hearing, any error that resulted in inadequate time to prepare for the September 8 hearing was harmless.

The Lewises' main contention is that the trial court erred in not extending the redemption period beyond October 3 and in ruling that because they did not deposit the full amount requested into the court on that date, their redemption rights terminated. Central to this claim is the trial court's authority to enlarge a redemption period and the degree of deference we grant to the trial court's decision. We have stated that in appropriate circumstances, a court may enlarge a redemption period under Utah Rule of Civil Procedure

6(b).[4] Rule 6(b) provides, "When by these rules ... an act is required or allowed to be done at or within a specific time, the court for cause shown may at any time in its discretion ... order the period enlarged...." Since rule 6(b) clearly grants the court discretion, we review the court's decision for an abuse of that discretion.[5] Generally, we will not find an abuse of discretion unless, given the applicable law and facts, the trial court's decision is unreasonable.[6]

The right of redemption from a foreclosure sale is a statutory right provided by Utah Code Ann. § 78–37–6.[7] The procedures for redemption are set out in Utah Rule of Civil Procedure 69(f). Under rule 69(f), property bought at a foreclosure sale "may be redeemed from the purchaser within six months after the sale on paying the amount of his purchase with 6 percent thereon" plus certain enumerated expenses.[8] In addition, a credit may be given if rents or profits are collected during the redemption period.[9] Rule 69(f)(3) provides procedures for determining the reasonableness and propriety of the amount requested for redemption.[10] Nowhere in section 78–

---

4. *Mollerup v. Storage Systems Int'l,* 569 P.2d 1122, 1124 (Utah 1977).

5. *See id.* at 1125.

6. *See State v. Petersen,* 810 P.2d 421, 424 (Utah 1991); *State v. Ramirez,* 817 P.2d 774, 781 n. 3 (Utah 1991).

7. Utah Code Ann. § 78–37–6 provides, "Sales of real estate under judgments of foreclosure of mortgages and liens are subject to redemption as in case of sales under executions generally."

8. Utah Rule of Civil Procedure 69(f)(3) provides:
    (3) Time for redemption; amount to be paid. The property may be redeemed from the purchaser within six months after the sale on paying the amount of his purchase with 6 percent thereon in addition, together with the amount of any assessment or taxes, and any reasonable sum for fire insurance and necessary maintenance, upkeep, or repair of any improvements upon the property which the purchaser may have paid thereon after the purchase, with interest on such amounts, and, if the purchaser is also a creditor having a lien prior to that of the person seeking redemption, other than the judgment under which said purchase was made, the amount of such lien, with interest.

9. Utah Rule of Civil Procedure 69(f)(6) provides:
    (6) Rents during period of redemption. The purchaser from the time of sale until a redemption, and a redemptioner from the time of his redemption until another redemption, is entitled to receive from the tenant in possession the rents of the property sold or the value of the use and occupation thereof. But when any rents or profits have been received by the judgment creditor or purchaser, or his or their assigns, from the property thus sold preceding such redemption, the amounts of such rents and profits shall be a credit upon the redemption money to be paid....

10. Utah Rule of Civil Procedure 69(f)(3) provides:
    In the event there is a disagreement as to whether any sum demanded for redemption is reasonable or proper, the person seeking redemption may pay the amount necessary for redemption, less the amount in dispute, to the court out of which execution or order authorizing the sale was issued, and at the same time file with the court a petition setting forth the item or items demanded to which he objects, together with his grounds of objection; and thereupon the court shall enter an order fixing a time for hearing of such objections.

37–6 or rule 69(f) is there a provision allowing for the amount of waste committed on the property to enter into the formulation of the redemption amount.

■ It is well established that the right of redemption is a "substantive right to be exercised in strict accord with statutory terms."[11] Not only is the right of redemption substantive, but also we have stated that the procedures for redemption often confer substantive rights.[12] Generally, therefore, when the procedure at issue affects the substantive rights of the parties,[13] the procedure should be followed strictly in order not to interfere with these rights.[14]

■ It is clear that the right of a purchaser at a sheriff's sale either to receive the proper redemption amount in accordance with rule 69(f) or to have the title perfected at the end of the six-month period is a substantive right.[15] Accordingly, strict compliance with the six-month redemption period is normally required.[16] Notwithstanding the foregoing, we have

also recognized that in exceptional circumstances, a court sitting in equity may extend a redemption period[17] or set aside a sheriff's sale after the period for redemption.[18] However, a court should take such an action only when the equities of the case are compelling and "move the conscience of the court."[19]

An example of such a case is *Young v. Schroeder*,[20] where this court, in a suit initiated after the period for redemption had expired, set aside foreclosure sales on the grounds that there was a gross sacrifice of the debtor's property and "the sales were attended by many and serious irregularities, for which the parties claiming under the sales were directly responsible."[21] We relied on the following facts: Land worth $26,000 was sold to satisfy a judgment of $1,700, the purchasers were the attorneys for the judgment debtor, the purchasers directed the land to be sold in parcels in a manner that prevented the land from being sold at a fair price, and the purchasers assured the debtor that they

A copy of the petition and order fixing time for hearing shall be served on the purchaser not less that two days before the day of hearing. Upon the hearing of the objections the court shall enter an order determining the amount required for redemption.

11. *Mollerup*, 569 P.2d at 1124; *see also* Utah Code Ann. § 78–37–6.

12. *See Mollerup*, 569 P.2d at 1124; *United States v. Loosley*, 551 P.2d 506, 508 (Utah 1976); *see also Tech–Fluid Serv. v. Gavilan Operating*, 787 P.2d 1328, 1333 (Utah Ct.App.), *cert. denied*, 795 P.2d 1138 (Utah 1990).

13. We note that not all redemption procedures can be characterized as substantive in all circumstances. In dealing with procedures that do not affect substantive rights, substantial compliance is generally sufficient. Indeed, we have stated that in such situations we will give the rules a
liberal construction and application to permit a property owner who can pay his debts to do so, and thus make his creditor whole, and save his property. Therefore, if a debtor, acting in good faith, has substantially complied with the procedural requirements of the rule in such a manner that the lender mortgagee is not injured or adversely effected, and getting what he is entitled to, the law will not aid in depriving the mortgagor of his property for mere falling short of exact compliance with technicalities.

*Loosley*, 551 P.2d at 508; *see also Tech–Fluid Serv.*, 787 P.2d at 1332–34; *Household Fin. Corp. v. Bacon*, 58 Or.App. 267, 648 P.2d 421, 423 (1982); *Gesa Fed. Credit Union v. Mutual Life Ins.*, 105 Wash.2d 248, 713 P.2d 728, 731–33 (1986) (en banc).

14. *See Mollerup*, 569 P.2d at 1124; *Loosley*, 551 P.2d at 508; *Tech–Fluid Serv.*, 787 P.2d at 1333.

15. *See Mollerup*, 569 P.2d at 1124; *Loosley*, 551 P.2d at 508; *Tech–Fluid Serv.*, 787 P.2d at 1333.

16. *See Mollerup*, 569 P.2d at 1124; *Loosley*, 551 P.2d at 508; *Tech–Fluid Serv.*, 787 P.2d at 1333.

17. *Mollerup*, 569 P.2d at 1124; *see also* Nelson & Whitman, *Real Estate Finance Law* 621–22 (2d ed. 1985).

18. *Young v. Schroeder*, 10 Utah 155, 37 P. 252, 256 (1894), *aff'd*, 161 U.S. 334, 345, 16 S.Ct. 512, 516, 40 L.Ed. 721 (1896).

19. *Mollerup*, 569 P.2d at 1124; *see also Schroeder*, 37 P. at 256; Nelson & Whitman, *Real Estate Finance Law* 621–22 (2d ed. 1985).

20. 10 Utah 155, 37 P. 252, 256 (1894), *aff'd*, 161 U.S. 334, 345, 16 S.Ct. 512, 516, 40 L.Ed. 721 (1896).

21. *Schroeder*, 37 P. at 256.

would not insist on the statutory period for redemption.[22] In a case more recently decided, *Mollerup v. Storage Systems International*,[23] we stated that a court may allow a mortgagor to redeem property after the six-month period to "relieve the mortgagor of the consequences of fraud, accident, mistake, or waiver...."[24] In *Mollerup*, however, we also made it clear that the mere allegation of a dispute is generally not sufficient to justify an extension of the redemption period. "To determine otherwise would allow others similarly situated to simply appear ex parte, assert a dispute ... or some other self-serving matter, and the effect would be to abridge the rights of a purchaser at sale."[25]

The Lewises, therefore, bear a heavy burden in this appeal. In order to succeed, they must show that the equities of their case are so compelling that the trial judge acted unreasonably in not extending the period. The Lewises base their claim on two alternate theories. First, they allege that the waste Stateline committed interfered with their ability to finance the redemption. Therefore, it is argued, before the Lewises were required to tender the redemption amount, they were entitled to a hearing on the amount of waste and a setoff of this amount from the redemption price. Accordingly, the redemption period should have been extended to allow the parties to schedule an evidentiary hearing and conduct limited discovery. It is admitted that no provision exists, in either section 78–37–6 or rule 69(f), for the amount of waste committed by a purchaser to enter into the formulation of the proper redemption amount. However, the Lewises assert that under the circumstances, equity requires a setoff of the amount of waste. Under their theory, the amount of the setoff should be arrived at through the procedures set out in rule 69(f)(3) which provide for a hearing to resolve disputes concerning the appropriate redemption amount.

In the alternative, the Lewises claim that even if they were not entitled to a setoff, equity entitles them to a extension of the redemption period of 3 to 4 days beyond October 3 in order to have additional time to obtain the certificates of title needed to finance the redemption. This claim is also based on the allegation that the waste committed on the property interfered with their ability to finance the redemption.

■ In addressing the Lewises' first argument, it must be noted that their claim involves more than an assertion that equity requires an extension of the redemption period. It also entails the assertion that equity requires that a factor not specifically provided for in rule 69(f) be included in the calculation of the redemption amount. Neither party has cited any controlling authority that directly deals with such a claim, and it appears that this issue has never been before this court. However, it is not necessary to resolve this issue in the instant case. Even assuming that a court sitting in equity has the authority to order a setoff, in order to succeed in their claim the Lewises must also establish that they are entitled to an extension of the redemption period to determine the extent of the waste. A review of the record clearly shows that there are no compelling circumstances[26] that would require an enlargement of the redemption period.

It is a well-established principle of equity that in order to claim equitable relief a

**22.** *Id.* at 254–56.

**23.** 569 P.2d 1122 (Utah 1977).

**24.** *Id.* at 1124. In fact, in *United States v. Loosley*, 551 P.2d 506, 508 (Utah 1976), we held that a purchaser's failure to object to technical deficiencies in the method of tenure within the redemption period constituted a waiver of the deficiency.

**25.** *Mollerup*, 569 P.2d at 1125.

**26.** In the instant case, there were three hearings. In each hearing, the court was confronted with different circumstances and arguments, and in each of the later hearings, the court modified an earlier ruling. The only final ruling is the October 13 order, which terminated the Lewises' redemption rights pursuant to the court's October 2 order. The October 2 order was issued after a hearing held on that same day. It is only this ruling that is before this court. *See* Utah R.App.P. 3(a); *see also, e.g., Salzetti v. Backman*, 638 P.2d 543, 544 (Utah 1981); *Salt Lake City Corp. v. Layton*, 600 P.2d 538, 539 (Utah 1979) (both holding that only a final order is appealable). Since the Lewises were not harmed by any of the previous hearings, *see supra* notes 2–

party must have acted in an equitable fashion.[27] The Lewises were aware of the demolition on March 17, 1989, but waited until August 28, 1989, the last day of the redemption period, to assert their claim. By waiting until the last moment to raise their claim, the Lewises insured that if the court accepted their argument, Stateline would be prejudiced. Under the Lewises' theory, Stateline would have to accept the Lewises' determination of the amount of the waste or the redemption period would have to be enlarged in order for the court to make the determination. Since there is no reason given for the delay and since the delay prejudiced Stateline, the Lewises are not in a strong position to claim they are entitled to equitable relief.[28]

It must also be remembered that at the October 2 hearing, the Lewises asserted that they could obtain the full amount requested by October 3. Therefore, at the time the court issued its October 2 order it appeared that any waste committed on the property did not defeat the Lewises' ability to redeem and that the Lewises would indeed recover the property. Furthermore, there was no showing that the Lewises would not be able to recoup any damage done to the property after they tendered the full redemption amount.

It is true that the Lewises were unable to obtain the necessary funds by October 3. However, they cannot fault the trial court for relying on their own representations,[29] particularly when they had ample time to petition the court for a modification of its order between October 3 and the issuance of the final ruling on October 13. Given these facts and the fact that at the time of the October 2 hearing the redemption period had in effect been extended for approximately five weeks, the trial court's order refusing to grant an extension for sufficient time to conduct an evidentiary hearing cannot be considered unreasonable.

█ The Lewises' second argument fails for the same reason as the first. There were no compelling circumstances that would render the trial court's decision unreasonable. Indeed, disregarding the claim that the Lewises are entitled to a setoff, the simple facts that the Lewises assured the court they would have the funds by October 3 and that the redemption period had already been extended approximately five weeks are sufficient to uphold the trial court's decision not to extend the redemption period past October 3. The trial court, therefore, did not abuse its discretion in ordering the Lewises to deposit the full amount into the court on October 3 and in ruling that the Lewises' redemption rights irrevocably lapsed due to their failure to comply with the court's order.[30]

Affirmed.

HOWE, Associate Chief Justice, and STEWART, DURHAM, and ZIMMERMAN, JJ., concur.

---

3 and accompanying text, the relevant circumstances to this appeal are the circumstances presented at the October 2 hearing.

**27.** *Coleman Co. v. Southwest Field Irrigation Co.,* 584 P.2d 883, 884 (Utah 1978); *see also Horton v. Horton,* 695 P.2d 102, 107 (Utah 1984).

**28.** It is true that under rule 69(f)(3), a party may raise a dispute near the end of the redemption period by paying "the amount necessary for redemption, less the amount in dispute, to the court ..." and filing "with the court a petition setting forth the item or items demanded to which he objects, together with the grounds of the objection...." In such a case, the court may set a hearing to determine the appropriate redemption price at a time after the running of the redemption period. *See generally Galloway*

*v. Merrill,* 801 P.2d 942, 943 (Utah Ct.App.1990). However, it is also true that the rules do not provide for the amount of waste to enter into the formulation of the redemption amount. The Lewises' claim is one in equity, and therefore equitable principles should govern the claim.

**29.** *See Battistone v. American Land & Dev. Co.,* 607 P.2d 837, 839 (Utah 1980) (generally equity "will not assist one in extricating himself from circumstances which he has created").

**30.** We only decide the narrow issue presented by appellants of whether the court erred in not extending the redemption period beyond October 3, 1989. We do not reach the question of whether the court abused its discretion in extending the period to October 3.